TABOR et al. v. MODERN WOODMEN OF AMERICA.†

(Court of Civil Appeals of Texas. Ft. Worth. Nov. 22, 1913. Rehearing Denied Jan. 10, 1914.)

1. INSURANCE (§ 757*) — FRATERNAL INSURANCE — DEATH DURING SUSPENSION — BY-LAWS.

Where a by-law of a fraternal association provides that a member failing to pay a benefit assessment shall be suspended, and that during such suspension his benefit certificate shall be absolutely void, where a member dies during his suspension, his beneficiaries have no interest in the certificate, although by another by-law a member was given the right to be reinstated on payment of all his dues within 60 days, which term had not expired at the time of the member's death.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. § 1919; Dec. Dig. § 757.*]

2. INSURANCE (§ 759*)—BENEFIT INSURANCE—SUSPENSION OF MEMBER.

Where an assessment was levied November 17, 1910, and under the terms of the benefit certificate the member had until the last day of December, 1910, to pay such assessment, failure to pay on or before December 31, 1910, forfeited the certificate, and the beneficiaries were not, after decedent's death, allowed 60 days, given to the member under a by-law, after such forfeiture to make the delinquent payment and reinstate the policy.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 1920, 1921; Dec. Dig. § 759.*]

Appeal from District Court, Wichita County; P. A. Martin, Judge.

Action by Minnie Tabor individually and as next friend, etc., against the Modern Woodmen of America. Judgment for defendant, and plaintiff appeals. Affirmed.

Smoot & Smoot, of Wichita Falls, for appellants. Carrigan, Montgomery & Britain, of Wichita Falls, for appellee.

SPEER, J. This suit was brought by Minnie Tabor, for herself and as next friend for her minor children, against the Modern Woodmen of America, a beneficial insurance company, to recover on a policy of insurance for $2,000 written on the life of A. B. Tabor, her deceased husband. The company answered, denying generally and pleading specially that the insured had failed to pay two assessments of $1.60 each, due, respectively, in November and December of 1910, together with certain local camp dues, in consequence of which the policy had been forfeited prior to the deceased's death. The court before whom the case was tried without a jury rendered judgment for the defendant, and the plaintiff has appealed.

Only two questions are raised by the various assignments presented. The first is that the representatives of the deceased had 60 days after the forfeiture of the certificate and the suspension of the member within which to make payment to the company. The case was tried upon an agreed statement of the facts from which we take the following:

"It is agreed that at the regular monthly session of the board of directors of said Modern Woodmen of America, held at the principal office of said society at Rock Island, Ill., on November 14, 1910, inclusive, and at the session held at 1 o'clock p. m. November 18, 1910, where the directors E. E. Murphy, A. N. Bort, and J. A. Rutledge were present, the director C. J. Byrns was absent, there being a quorum of said board of directors present, Director Rutledge introduced the following resolution which, upon motion, was unanimously adopted, to wit: 'Whereas, the claims approved, allowed, and ordered paid at this meeting of the board of directors amount to $1,047,500, with claims heretofore allowed and remaining unpaid of $123,376.30, and contingent claims amounting to $477,000, a present aggregate liability of $1,647,876.30, that from the present condition of said fund it is the judgment of the board of directors that an assessment should be levied: Therefore be it resolved that assessment No. 258 for the month of December, 1910, be, and the same is hereby, levied upon the beneficial members of the society in good standing to pay benefits upon the certificates of deceased beneficial members whose death occurred while in good standing; that the head clerk prepare the notice of the levy of this assessment and cause same to be published in The Modern Woodman, the official paper of this society, December 1910 number thereof.'

"It is further agreed that the said Albert B. Tabor was duly and regularly notified of the levy of said assessment, as required by the by-laws of said defendant; that pursuant to the levy of said assessment said Albert B. Tabor was required to pay to the clerk of said Wichita Falls Camp No. 12,006, of which he was a member, the sum of $1.60 within the time fixed and provided in the by-laws; that the said Albert B. Tabor failed and neglected to pay the said sum of $1.60 to the clerk of said camp on or before the 31st day of December, 1910, and by reason thereof the clerk of said camp reported to the head clerk of defendant society that the said Albert B. Tabor failed to pay said assessment, and became suspended on the 1st day of January, 1911.

"It is agreed that the head clerk of said defendant, whose office is at Rock Island, Ill., received the notice of the failure of said Tabor to pay said assessment No. 258 on or before the 20th day of January, 1911, said

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key-No. Series & Rep'r Indexes

† Writ of error denied by Supreme Court.

information being conveyed in the regular pass report of said Camp for the month of December, 1910; that thereafter in due course of post, to wit, on the 24th day of January, 1911, C. W. Hawse the head clerk of said defendant, mailed to said Albert B. Tabor a notice of suspension; that said notice of suspension was forwarded by United States mail, postage prepaid, on January 24, 1911, addressed to Albert B. Tabor, Wichita Falls, Tex., 401 Burnett street.

"It is further agreed that neither the said Albert B. Tabor, nor any person for him, tendered or offered to pay the aforesaid assessments, or either of them, at any time during his lifetime, but after his death, which occurred on January 29, 1911, an amount equal to the sum of said assessments 257 and 258 was tendered to the clerk of the local camp at Wichita Falls, Tex., by the representatives of the plaintiffs herein, and that the said tender was refused by said local camp clerk; that said tender was made in the month of February, 1911, and within 30 days after the death of the said Alfred B. Tabor."

[1] Those portions of the by-laws which, under the terms of the certificate, are a part of the contract of insurance, and which bear upon the first contention, to the effect that the legal representatives of deceased have 60 days within which to pay the delinquent assessment, are as follows:

"Every beneficial member when so notified that a benefit assessment has been levied and ordered collected by the board of directors, who shall fail to pay same on or before the last day of the month following such levy, or shall fail to pay his local camp dues on or before the last days of the months of March, June, September, or December, or who shall fail to pay with the assessments next due, thereafter levied, any fine regularly imposed upon him shall, ipso facto, become suspended and during such suspension his benefit certificate shall be absolutely null and void. Camp clerks shall not accept in the months of March, June, September, or December, assessments, unless such payments be accompanied by camp general fund dues in advance, nor dues in advance unless the assessment current on the date of the payment be also paid.

"Any member suspended for the nonpayment of dues, assessments or fines, if not engaged in any of the prohibited occupations mentioned in section 12 hereof, may be reinstated by payment within sixty days from the date of suspension of all arrearages of every kind including current assessments and all fines, dues and assessments of which he may have been liable had he remained in good standing, provided, however, that he be in good health at the time of reinstatement; provided further that the receipt and rendition of assessments or dues in case the suspended neighbor is not in good health or is engaged in any such prohibited occupations shall not have the effect of reinstating such member, or entitling him or his beneficiaries to any rights under a benefit certificate."

We think the language quoted will not admit of the interpretation that the 60 days allowed for reinstatement after suspension were days of grace within which payment might, at all events, be made, and during which time the benefit certificate would be in force. The language employed is very emphatic, and indicates an unmistakable intention upon the part of both parties that the failure of the insured to pay an assessment on or before the last day of the month following its levy shall work an absolute forfeiture of the certificate, and that from and after that time until reinstatement neither the insured nor his beneficiaries could have any rights thereunder.

[2] The other question presented on the appeal is that under the agreed facts the levy of assessment No. 258 was not made until during the month of December, and that under the operation of the by-laws, therefore, the deceased had until the last day of January in which to make payment, and, his death having occurred on the 29th day of January, he was not at that time in default, and the plaintiff was entitled to recover. The facts already stated, however, show unmistakably, as we think, that assessment No. 258 was duly levied on November 18, 1910. There is no evidence of the assessment's having been levied at any other time. So that under the terms of the contract the insured had only until the last day of December, 1910, within which to make payment. We are aware that the rule of construction in such contracts is that that interpretation most favorable to the insured must be adopted, but this is a rule of construction of a contract actually made, and never authorizes the making of a different contract. The facts as we understand them are capable of only one interpretation, and that is in accordance with the judgment of the trial court holding that the failure of the deceased to pay assessment No. 258 on or before December 31, 1910, forfeited the benefit certificate, and that the legal representatives of deceased were not allowed 60 days from and after such forfeiture within which to make the delinquent payments, and thus to reinstate the policy after the deceased's death.

The judgment is in all things affirmed.